NOTICE

*Memorandum decisions of this court do not create legal precedent. See Alaska Appellate Rule 214(d) and Paragraph 7 of the Guidelines for Publication of Court of Appeals Decisions (Court of Appeals Order No. 3). Accordingly, this memorandum decision may not be cited as binding precedent for any proposition of law.*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| ERIC J. HOLDEN,<br><br>  Appellant,<br><br>v.<br><br>STATE OF ALASKA,<br><br>  Appellee. | Court of Appeals No. A-8780<br>Trial Court Nos. 3PA-02-916 CI<br>3PA-00-488 CR<br><br>MEMORANDUM OPINION<br><br>AND JUDGMENT<br><br>[No. 5019 - November 16, 2005] |

Appeal from the Superior Court, Third Judicial District, Palmer, Eric Smith, Judge.

Appearances: Eugene Cyrus, Eagle River, for Appellant. Diane L. Wendlandt, Assistant Attorney General, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: Coats, Chief Judge, Mannheimer and Stewart, Judges.

COATS, Chief Judge.

In 2000, Eric J. Holden was convicted, on a plea of no contest, of refusing to submit to a breath test.[1] Several years later, he was charged with drunk driving. Facing enhanced penalties as a repeat offender, Holden filed an application for post-conviction relief from his earlier conviction. In his application, he argued that he had received ineffective assistance of counsel in the 2000 case because his trial attorney had not moved

---

[1] AS 28.35.032(a).

Ex. C, p. 1

to suppress the evidence of his breath test refusal on the ground that he had been denied his right to contact a friend or relative before deciding whether to take the breath test.

After a hearing, at which Holden and his trial attorney testified, Superior Court Judge Eric Smith denied the application, concluding that Holden had failed to rebut the strong presumption that his attorney had made a sound tactical decision. Holden challenges that ruling, arguing that it rested on factual and legal errors. We conclude that Holden's claims of error have no merit, and affirm Judge Smith's decision.

Holden also argues that Judge Smith abused his discretion by refusing to admit certain evidence, and by not allowing him to present expert testimony to establish that his trial attorney was incompetent. These claims fail because Holden never asked the court to admit the evidence that he now claims the court erroneously excluded.

*Facts and proceedings*

On March 25, 2000, the state troopers received a report that a vehicle was stuck in a ditch near Big Lake and that the driver was intoxicated. Trooper Skip Chadwell found the vehicle in a ditch with the engine idling and Holden asleep in the driver's seat. Trooper Chadwell established that Holden was intoxicated and arrested him. Holden was ultimately charged with driving while intoxicated, refusal to submit to a chemical test, and driving with a revoked license.[2]

Before trial, Holden moved to suppress the evidence of his breath test refusal, arguing that he had been denied his right under *Copelin v. State*[3] and AS 12.25.150(b) to contact an attorney before deciding whether to take the breath test. The district court denied the motion after finding that Trooper Chadwell had told Holden at least a dozen

---

[2] For reasons that are not relevant here, the State dismissed the charge of driving with a revoked license.

[3] 659 P.2d 1206 (Alaska 1983).

– 2 –

5019

Ex. C, p. 2

times that he could call his lawyer, had offered to move his handcuffs to the front so he could dial the phone, and had offered him two local phone books. The court found that Holden gave non-responsive answers to all these offers, answering Trooper Chadwell by saying he wanted to give his lawyer "a few minutes." The court concluded that there was "little else" Trooper Chadwell could have done to help Holden contact a lawyer, and that Holden had not been sincerely interested in doing so.

After the court denied Holden's motion to suppress, Holden pleaded no contest to breath test refusal and the State dismissed the drunk driving charge.

In 2002, after Holden was again charged with drunk driving, this time as a felon, Holden filed this application for post-conviction relief. Holden claimed that his trial attorney had been ineffective because he had not moved to suppress the evidence on the ground that he was denied the right described in *Zsupnik v. State*[4] to call a relative or friend before submitting to a breath test. After a hearing, Judge Smith denied the application. Judge Smith found that Holden's attorney discussed the *Zsupnik* issue with Holden and made a sound tactical decision that the facts of Holden's case did not support a motion on that ground. Holden now appeals the denial of his application for post-conviction relief.

---

[4] 789 P.2d 357 (Alaska 1990).

*Holden has not rebutted the presumption that his attorney was competent*

In *Risher v. State*,[5] the Alaska Supreme Court adopted a two-prong test for evaluating claims of ineffective assistance of counsel. First, the defendant must show that his counsel's performance fell below the "range of competence displayed by one of ordinary training and skill in the criminal law."[6] Second, the defendant must show that this incompetence had an adverse impact on the case that contributed to the defendant's conviction.[7] The defendant must prove his attorney's lack of competence by clear and convincing evidence.[8] This includes the burden to rebut the strong presumption that the attorney's actions were the product of "sound tactical considerations."[9]

To prevail in his application for post-conviction relief, Holden thus had to show that any competent attorney would have pursued a motion to suppress the evidence in his case on the ground that he was denied his statutory right to call a friend or relative.

In *Zsupnik*, the supreme court ruled that AS 12.25.150(b) requires the police to honor the request of a person arrested for driving while under the influence to contact a friend or relative before deciding whether to submit to a breath test.[10] If the police violate this right, the defendant is entitled to suppression of the breath test result (or of evidence of the defendant's refusal) — but only if the defendant sought to call the friend

---

[5] 523 P.2d 421 (Alaska 1874).

[6] *Id.* at 424-25.

[7] *State v. Jones*, 759 P.2d 558, 573 (Alaska App. 1988); *Risher*, 523 P.2d at 424-25.

[8] AS 12.72.040; Alaska R. Crim. P. 35.1(g).

[9] *Jones*, 759 P.2d at 569.

[10] *Zsupnik*, 789 P.2d at 359-60.

– 4 –

5019

or relative for advice on whether to take the breath test, or for some other "defense purpose."[11]

Whether the defendant invoked the right described in *Zsupnik* is a factual question decided based on the totality of the circumstances.[12] We therefore must uphold the superior court's findings on this issue unless they are clearly erroneous.[13]

Judge Smith ruled that Holden had failed to rebut the presumption that his attorney had made a sound tactical decision not to file a *Zsupnik* motion. For the reasons explained below, we agree with Judge Smith's ruling.

The superior court found that Holden never told Trooper Chadwell that he wished to contact a friend or relative. Instead, Holden argues that the trooper's statements dissuaded him from asserting that right. To support this claim, he points to the following dialogue between himself and Trooper Chadwell:

| | |
|---|---|
| *Trooper Chadwell*: | Okay. So are you going to refuse? |
| *Holden*: | No I'm not refusing. |
| *Trooper Chadwell*: | Okay. So it's going to be one way or the other. |
| *Holden*: | I'm talking to my attorney before I do. |
| *Trooper Chadwell*: | Well, you're allowed to make a phone call, but we're not going to sit here until 5:00 for you to make that phone call. |
| *Holden*: | Well, I'm going to wait until (indiscernible). |
| *Trooper Chadwell*: | Okay. Well, I will read you the paperwork and then you can decide what you want to do, okay? |

---

[11] *Winfrey v. State*, 78 P.3d 725, 730 (Alaska App. 2003).

[12] *Zsupnik*, 789 P.2d at 362.

[13] *Anchorage v. Erickson*, 690 P.2d 20, 22 (Alaska App. 1984); *Gallmeyer v. State*, 640 P.2d 837, 839 (Alaska App. 1982).

| | |
|---|---|
| *Holden:* | I've already done that breath thing, I mean is that legal? |
| *Trooper Chadwell:* | Well it's legal to take a personal breath test, I'm ... . |
| *Holden:* | Will it hold up in court (indiscernible) yes or no, that's all I'm asking. |
| *Trooper Chadwell:* | I can't tell you yes or no cause you know as well as I do whenever ... |
| *Holden:* | I can't tell you yes or no either. |
| *Trooper Chadwell:* | Okay. Well, I'm going to tell you what I know, and I say yes or no because nobody knows what a court ... . |
| *Holden:* | When I talk to my attorney he will tell me what I should do. |
| *Trooper Chadwell:* | Yea, that's your choice. Yea, I'm not trying to talk you out of anything I'm just telling you the procedure. Now what I am going to do is just read you all of your rights. |
| *Holden:* | This is what I am saying, I will not say anything because I came down here to tow — to get a car out of the ditch for my girlfriend and you arrested me. Okay. So that's all I'm saying I'm not saying nothing else. |
| *Trooper Chadwell:* | Okay. And, I'm not asking you to say anything, Mr. Holden. I'm just explaining things to you. |
| *Holden:* | I do get a phone call though right? |
| *Trooper Chadwell:* | Sure. |
| *Holden:* | Can I have it? |
| *Trooper Chadwell:* | If you want to call your attorney you are certainly welcome to, anything else has to wait until we get to Mat-Su Pre-trial. |

Following this exchange, Trooper Chadwell repeatedly offered Holden the opportunity to call his attorney, and Holden gave evasive or non-responsive answers. After the

trooper's final offer, Holden said: "Not until I talk to my attorney." After which, Trooper Chadwell concluded that Holden was refusing to submit to a breath test.

Holden argues based on this dialogue that a *Zsupnik* claim should have been "readily apparent" to any competent attorney because Trooper Chadwell referred to Holden's right to a phone call in the singular, and told Holden he could call an attorney, but said that "anything else" had to wait until he was transferred to the Mat-su jail. Additionally, Holden argues that he was prejudiced by his attorney's failure to move for dismissal based on a *Zsupnik* violation because Trooper Chadwell's statements amounted to "unreasonable interference" with his right to contact a friend or relative.

In superior court, Holden's trial attorney submitted affidavits and testified about his discussions with Holden on this issue. The attorney asserted that Holden never claimed that he had been denied his right to contact a friend or relative. He said that he nevertheless considered filing a motion to suppress on this ground, and discussed that possibility with Holden, but decided not to file the motion because he did not believe it could be won. Holden contradicted this version of events, testifying that his attorney never discussed the *Zsupnik* issue with him.

After hearing this testimony and reviewing the transcript of the relevant discussion between Trooper Chadwell and Holden, Judge Smith found that Holden's attorney had considered the *Zsupnik* issue, that he had spoken with Holden about it, and that he had concluded that a motion on that ground would fail. Holden has not shown that these findings were clearly erroneous.

Judge Smith concluded that Holden had a colorable claim that he had been denied his right to call a friend or relative. But he ruled that the claim was not sufficiently meritorious that any competent attorney would have raised it. That ruling finds substantial support in the record. The constitutional guarantee against ineffective assistance of counsel

does not oblige a defense attorney to pursue every non-frivolous motion.[14] Judge Smith found that Holden never asked Trooper Chadwell if he could call a friend or relative. And it is far from obvious, when Trooper Chadwell's statements are read in context, that a reasonable person in Holden's position would have interpreted those statements as discouraging or forbidding such a call.

Because Holden failed to rebut the strong presumption that his attorney made a sound tactical decision not to file a motion to suppress on this ground, there is no need to resolve Holden's claim that he was prejudiced by his attorney's failure to do so.[15] However, we note that a review of the record in Holden's case strongly suggests that even if his trial attorney had proved that the police had violated his right to call a friend or relative, he would not have been entitled to suppression of the evidence on that ground. Even viewing the evidence in Holden's favor, there is no evidence that he sought to call a relative or friend for any "defense purpose." At the hearing on Holden's post-conviction relief application, Holden testified that he wanted to call a relative or friend to "take care of me and my property." He explained that he "needed an attorney and I needed someone to ... help me get — get out of jail." Nowhere in his testimony in superior court, or in his brief on appeal, did Holden assert that he wanted to contact a friend or relative for advice on whether to take the breath test (or for assistance in contacting an attorney who would provide such advice), or for some other defense purpose. In *Winfrey v. State*,[16] this court held that the defendant was not entitled to suppression of his breath test result because the police refused his request to call his wife to arrange for bail.[17] Likewise here, even assuming Holden was denied the right to call a friend or relative to take care of his

---

[14] *Steffensen v. State*, 837 P.2d 1123, 1126 (Alaska App. 1992); *Jones*, 759 P.2d at 572.

[15] *See Larson v. State*, 614 P.2d 776, 780 (Alaska 1980).

[16] 78 P.3d 725.

[17] *Id.* at 729-30.

property or to get him out of jail, he would not be entitled to suppression of the evidence based on that violation. Therefore, it appears that Holden failed to establish the second prong of the *Risher* test: that his attorney's incompetence, if any, had an adverse impact on the case that contributed to his conviction.[18]

### *Holden has shown no error in the court's evidentiary rulings*

At the evidentiary hearing in superior court, Holden asked Judge Smith to admit the audio recording of his suppression hearing. Holden offered the audio tape for one purpose: to show that there was no testimony or argument at the suppression hearing concerning whether he had been denied his statutory right to contact a friend or relative. Judge Smith excluded this evidence after finding that it had no relevance to his decision. Because Judge Smith found that an ordinarily competent attorney could decide not to raise a *Zsupnik* claim in Holden's case, he did not abuse his discretion by precluding Holden from offering additional evidence that his attorney had in fact not raised that claim.

Holden also argues that he should have been permitted to testify that he wanted to call a friend or relative to establish that he had a viable *Zsupnik* claim. Holden acknowledges that he was allowed to testify that he wanted to call a friend or relative, but he complains that his testimony was admitted for only one limited purpose: to impeach the credibility of his trial attorney's statement that he had discussed the *Zsupnik* issue with Holden and concluded that a motion raising that claim would fail.

We have reviewed the post-conviction relief proceeding and conclude that Holden never asked Judge Smith to admit this testimony to show that he was prejudiced by his attorney's failure to raise a *Zsupnik* claim; therefore, he cannot claim that the court abused its discretion by failing to admit the evidence for this purpose.[19] In any event, Holden's subjective wish during his contact with Trooper Chadwell had little bearing on

---

[18] See *Jones*, 759 P.2d at 573; *Risher*, 523 P.2d at 424-25.

[19] See A.R.E. 103(a)(2).

whether his claim had merit; the more pertinent issues were whether Holden invoked his right to call a friend or relative, and whether, viewed in context, the trooper's statements would have dissuaded a reasonable person from exercising that right.

*Holden never asked to present expert testimony*

Holden next claims that Judge Smith abused his discretion by refusing to permit him to present expert testimony on whether, under the facts of his case, a competent attorney would have filed a motion to suppress the evidence of his breath test refusal by claiming a violation of the *Zsupnik* right to contact a friend or relative.

Holden points to the following discussion to support his claim that Judge Smith refused to allow him to present expert testimony:

| | |
|---|---|
| *Court*: | Well, [Holden's trial attorney] testified today that he didn't think [the *Zsupnik* claim] was an appropriate thing to raise. |
| *Defense counsel*: | Then we're in disagreement. Then we — then [the trial attorney] and I are in disagreement ... . |
| *Court*: | But the fact that you disagree doesn't render him incompetent. |
| *Defense counsel*: | Right. So you have to make the independent decision. |
| *Court*: | That's right. |
| *Defense counsel*: | Right. You — unless you want to hear from experts on that point, and ... . |
| *Court*: | No, not particularly. |

The above discussion plainly shows that Holden never made a request to present expert testimony, he merely asked Judge Smith if he "want[ed] to hear from experts on that point." Moreover, Holden made no offer of proof as to the substance of that expert

testimony, as required under Evidence Rule 103(a)(2).[20] Given these circumstances, we conclude that Holden failed to preserve this claim of error.

*Conclusion*

The decision of the superior court is AFFIRMED.

---

[20] *See* Commentary to A.R.E. 103(a) ("If the ruling is to exclude evidence, the substance of the offered evidence must be made known to the court in order to ascertain on appeal whether a substantial right has been affected.").