[illegible] what the.....

[illegible] Absolutely. DNA doctors -- get up there.....

[illegible] So we would have to reopen the DNA testimony?

[illegible] lawyer who was representing the person at the time [illegible] ask the DNA question because Witness 12 [illegible] information I did not want to come out, and

[illegible]

MR. CYRUS: Right.

THE COURT: .....I asked the DNA question, Witness 12 was going to have to say it. So that would require Witness 12 to come in and probably that would require Witnesses 1 through 11 too, because otherwise the judge would have no clue how it all fit together. Right?

MR. CYRUS: Right. You're absolutely.....

THE COURT: And so.....

MR. CYRUS: .....right.

THE COURT: All right. You can take that one up on appeal.

MR. CYRUS: Okay. All right. But -- no, I'll get the cite to you, Judge. The.....

THE COURT: I'll love to hear the cite. That'll be a reconsideration motion.

MR. CYRUS: All right. That -- that'll be fine, okay. But let -- can I make the record, though?



THE COURT: No.

MR. CYRUS: Okay. Can we.....

THE COURT: I don't have time and you -- I think you are so wrong.....

MR. CYRUS: Okay. Can we -- could.....

THE COURT: .....that I am not -- no, and you're not going to get a continuance.

MR. CYRUS: No, no, I'm not asking.....

THE COURT: This is done now.

MR. CYRUS: Can we assume then for the record now, just for the record, that it was a winnable motion?

THE COURT: No.

MR. CYRUS: Okay. Can we.....

THE COURT: I don't agree with your legal analysis.

MR. CYRUS: Yeah. So we don't -- we -- right now it doesn't matter whether.....

THE COURT: What Mr. Holden thinks is winnable or not is irrelevant, all right. I'll make that ruling. You can stick that in your list of points on appeal too.

MR. CYRUS: Well, I hope you're not.....

THE COURT: Whether.....

MR. CYRUS: I hope you're not going to rule against me just.....

THE COURT: No, but I -- I'd.....

MR. CYRUS: But.....



THE COURT: .....say the same to Ms. Gernat.

MR. CYRUS: Right. Right.

THE COURT: If she's got a problem with -- I said we'll stick it in a list of points.....

MR. CYRUS: Okay. Let.....

THE COURT: .....on appeal if she needs it.

MR. CYRUS: Let me get back to you on that, because -- just my experience has been other -- just a month ago, two months ago, otherwise in Dillingham, we did the suppression motion and the way the judge ruled, he said -- he said this way: You're right, the attorney didn't raise it, but it didn't matter; you lost; I evaluate the suppression motion; you lose. So -- I mean, I got a decision for.....

THE COURT: But that's a different issue, isn't it? Because the -- I can tell you, based on what I see in the motions, whether I think it's a winnable motion. Right? I can certainly get the evidence from Mr. Holden as to whether or not he talked to Mr. Wells about it.....

MR. CYRUS: Yeah.

THE COURT: .....whether it was before Mr. Wells, and Mr. Holden can talk about what happened.

MR. CYRUS: Okay.

THE COURT: But whether Mr. Holden thought it was a winnable issue is utterly irrelevant.

MR. CYRUS: Oh, I agree with you, I agree with you. I



just want to.....

THE COURT: And don't ask him that question.

MR. CYRUS: I won't -- ask him -- I'll ask Mr. Holden this question.

DIRECT EXAMINATION CONTINUED

BY MR. CYRUS:

Q Mr. Holden, did you want to call a relative or friend at the time of the processing?

MS. GERNAT: Objection. We're relitigating the.....

THE COURT: Yeah, he can.....

MS. GERNAT: .....issue.

THE COURT: He can.....

MS. GERNAT: How does that go to Mr. Wells's decision? The issue is Mr. Wells. The focus is on Mr. Wells.

THE COURT: It goes to the credibility of Mr. Wells's assertion that he talked to Mr. Holden about it.

A If I'd have known I had that right, yes. Because I needed to get ahold of somebody to take care of me and my property.

Q Okay.

A I needed an attorney and I needed someone to help -- help me get -- get out of jail.

Q All right. So the answer was, you were -- you would have liked to have been able to make a phone call to.....

A Yes, sir, I would have.



Ex. J, p. 16

...u do it then?
...I had that opportunity. I was told.....
...AT: Objection.
...nly make one call.

...RT: The objection's overruled.
...US: All right. That's the only point I wanted to ... My record's clear now for you, and she can cross ... the wants on that.
...NAT: Well, Your Honor, is the court going to ... the transcript in, since Mr. -- I mean, I could sit ... read the entire transcript that Mr. Cyrus decided to ... right words out of.
...URT: Well, no. I -- we will note for the

...RNAT: It is incorporated into the record?
...OURT: .....that this -- in the state's -- I'll do ... the state's opposition in support of motion to ... the state attached a transcript of the conversation ... Mr. Holden and Trooper Chadwell. And it's on page 2, ... and 5.
...ERNAT: Okay.
...COURT: So that's part of the record of this case.
...ERNAT: Thank you.
...CYRUS: And then we also are submitting the

...ation hearing record itself, the CD.....
...COURT: I don't know that we're doing -- I don't know ... we're there yet.....
...CYRUS: Okay.
...COURT: .....all right?
...CYRUS: But I'm.....
...COURT: I mean, I.....
...CYRUS: I'm offering that now, and we can table it to ... it later.
...COURT: I'm not discussing anything later.
...CYRUS: Okay. Well, then I'll bring up the -- I ... it needs to be.....
...COURT: If you have authority to indicate that I have ... review the entire record of the trial -- I mean, I just ... see my having you relitigate everything.
...CYRUS: Well, I agree with you. I don't believe you ... to relook at that. If you find that he never raised the ..., that he decided.....
...COURT: No.
...CYRUS: .....it's not there.....
...COURT: If I find he chose not to raise the ...
...CYRUS: Yes.
...COURT: .....is one issue.
...CYRUS: Right.

THE COURT: It's not even clear to me anymore that he didn't raise it.
MR. CYRUS: Well, that's what I'm trying to suggest.....
THE COURT: I mean, it's very garbled at this point, isn't it?
MR. CYRUS: Yes. Yes, and that's why I think we.....
THE COURT: Why don't we have Ms. Gernat cross examine.....
MR. CYRUS: Right.
THE COURT: .....Mr. Holden? Go ahead.

ERIC J. HOLDEN

testified as follows on:

CROSS EXAMINATION

BY MS. GERNAT:
Q Mr. Holden, you have a stake in the outcome of this case, don't you?
A Unfortunately, yes, ma'am, I do.
Q If -- because if you still have -- I mean, the refusal conviction that you have out of this PCR case is -- counts as a prior for purposes of making you either, one, serve more jail time, and two, raises your -- because if this refusal goes away, you have less prior -- priors for purposes of additional crimes? You know that.....
A Well.....
Q .....the DUIs build on each other. Your second time.....

A I'm not -- I'm not sure.....
Q .....you serve more time in.....
A .....of your inference, but yes.
Q Okay. So if there -- if Mr. Cyrus wins his case and you get to reopen your old case, this DUI refusal, what -- the 00488 case, the one we're talking about -- if you weren't convicted on that case, all your DUI now wouldn't be a felony?
A You know, your inference and reference to this.....
Q I just asked you a question, Mr. Holden.
THE COURT: Mr. Holden, you need to answer the question, regardless of where she.....
A Yes.
THE COURT: .....you think it's coming from.
Q And if you.....
A Isn't that logical?
Q Well, I can't testify. I have to ask people questions. So.....
A That -- that would be.....
Q .....that's why I'm asking you the question.
A .....the logical outcome, yes. I mean, what other alternative would there be?
Q And if Mr. Cyrus -- in your attempt to have that case reopened, if you lose, then you stay charged with a felony in your most recent case?

nson

58

Ex. J, p. 17

...er alternative would there be?
...ing you yes or no.
...ould be the law. Yes, ma'am.
...ERNAT: I have nothing further.
...OURT: Thank you, Mr. Holden.
...CYRUS: Okay.
...COURT: You're all done. You can go back over there.
...CYRUS: Okay, thank you.
...s excused)
...CYRUS: So we would like to offer the suppression
... record, the tape.....
...COURT: And what would the suppression hearing record
...me?
...CYRUS: The record would show you that Mr. Wells
...aised the Zupnik issue. My client never testified
... Zupnik issue regarding that.....
...COURT: All right.
...CYRUS: .....phrase that we brought to your.....
...COURT: There's no question Magistrate Wells didn't
... it.
...CYRUS: Right, right.
...COURT: So now.....
...CYRUS: So.....
...COURT: .....what is vague -- it looks like Mr. Wells
... it in a reply but it didn't come up at the hearing, is

...understand to be.....
...CYRUS: That's right.
...COURT: .....the point.
...CYRUS: That's right.
...COURT: All right. And.....
...CYRUS: So.....
...COURT: And so let's assume that's true, okay. Then
...CYRUS: Then we believe that that issue should have
...ised.....
...COURT: Well, I understand that.
...CYRUS: .....in front of Judge.....
...COURT: You have to show that -- since Mr. Wells
... that he thought about it and decided not to do
...CYRUS: Right.
...COURT: .....you have to show that it's outside the
... of reasonable actions that a competent attorney would
...CYRUS: Well, the -- Zupnik -- it's right on point,
... Zupnik was at the police station and.....
...COURT: Well.....
...CYRUS: .....asked to call.....
...COURT: You don't -- just because Zupnik exists
... mean you always raise it. So.....

MR. CYRUS: Right.
THE COURT: .....you need to tie it specifically to this case and show that an -- it was utterly -- that it was unreasonable of an -- of a competent attorney.....
MR. CYRUS: Be.....
THE COURT: .....not even -- not to raise it.
MR. CYRUS: It's very simple. The cases are clear from Zupnik that you get two phone calls. You're not allowed one phone call.....
THE COURT: But, Mr. Cyrus.....
MR. CYRUS: Yeah. It's obvious.....
THE COURT: .....you need to tie it -- I know all about Zupnik, all right.
MR. CYRUS: Then it's obvious -- a good.....
THE COURT: Tie it to this case. Why is it blatantly.....
MR. CYRUS: A good attorney could have.....
THE COURT: .....obvious that a good attorney would.....
MR. CYRUS: A good attorney should have seen that right off the bat.
THE COURT: Where? Where?
MR. CYRUS: In the phrase that your -- everything else is done at Mat-Su Pretrial. That's a key phrase, that's a trigger. You put that in a law school exam that people who have studied Zupnik and who have studied Copeland, that had

been an issue that -- raised that they didn't put it in a law exam with that scenario of facts in there, you'd be -- you'd lose a point for not raising it. It's that.....
THE COURT: If -- let me just -- wait.....
MR. CYRUS: .....fundamental in.....
THE COURT: Wait, wait, wait, wait.
MR. CYRUS: .....DWI law.
THE COURT: Let me be clear. If I understand it correctly, Zupnik requires asking.
MR. CYRUS: No, it does not. In fact, in Zupnik itself, it didn't require an asking of it at all.
THE COURT: If I remember correctly, you don't -- does -- well, you remind me. Do the police have to tell in the field that they're entitled to.....
MR. CYRUS: No.....
THE COURT: .....call a lawyer?
MR. CYRUS: No, no, no. Here's the problem here, is the police told Mr. Holden.....
MS. GERNAT: No. In fact, case law has.....
MR. CYRUS: .....that.....
MS. GERNAT: .....come out that said they do not have a right to call anybody in the field.
THE COURT: Right.
MR. CYRUS: Right, right. You don't have to call, but.....

...DEP by Kenson

THE COURT: That -- you -- in the field.
MR. CYRUS: But if somebody in the field says, hey, I ... to call somebody.....
THE COURT: I understand that.....
MS. GERNAT: They still don't have to.....
THE COURT: I.....
MS. GERNAT: .....make a phone.....
THE COURT: I.....
MS. GERNAT: .....accessible, if they ask in the field.
THE COURT: That's right.
MS. GERNAT: They're -- that -- litigated that issue.
THE COURT: Okay. Yeah.
MR. CYRUS: No, no, they have to make it accessible as ... as they get to the station.
MS. GERNAT: Yeah, that's not the field.
THE COURT: But -- that's not my issue.
MR. CYRUS: Oh, you're.....
THE COURT: All right? Let's.....
MR. CYRUS: You're.....
THE COURT: Let's.....
MR. CYRUS: Okay, here's the issue.....
THE COURT: Let's please focus on what we want to focus on.
MR. CYRUS: Here -- here's the issue -- is -- the issue ... the defendant is told -- he's told by the police one phone

... a phone call.....
THE COURT: Where?
MR. CYRUS: .....oh -- right there in the transcript.
THE COURT: Where? That's not -- I mean, that's what I'm looking at.
MR. CYRUS: Okay. Well, we -- well, you're allowed to make a phone call. We're not going to sit here until 5:00 to make that phone call. Phone call, okay. You -- if you want to call your attorney, you're welcome to it. Anything else has to wait until we get to pretrial. There's -- he's telling him one phone call to your attorney, he's the only person you can call.
THE COURT: What does anything else mean?
MR. CYRUS: That's -- that's what.....
THE COURT: Anything -- you said anything else will have to wait till you get to the station. How does that tell him he only gets one phone call?
MR. CYRUS: Anything else will have to wait till the station.
THE COURT: Right. How does that tell him he only gets one phone call?
MR. CYRUS: Because in the context, you get a phone call, you call your attorney, that's in the context.
THE COURT: Anything else will have to wait till you get to the station.

MR. CYRUS: Another call will have to wait until you get to the.....
THE COURT: And isn't the case law that they don't have to provide a phone call in the field for anything?
MR. CYRUS: That's true, they don't have to provide a phone call in the field. But this is at the station where he's asked. And this is at the DW.....
THE COURT: You just said, will have to wait till we get to the station.
MR. CYRUS: He's in the -- no, he's in the station right now. He's just -- he's running through the breath test machine, he's asking him to blow the breath test. This is at the station house. This is not at the scene.
THE COURT: I'm confused then. Why did he say anything else will have to wait till he gets to the station?
MR. CYRUS: That's right. He shouldn't have said.....
MS. GERNAT: He said, anything else will have to wait till Mat-Su Pretrial.
THE COURT: Mat-Su Pretrial.
MR. CYRUS: Right, right, which is right next door. So here he is, my client wants to call an attorney, he wants to make phone calls to attorney. The officer gives him opportunities to make a phone call. He -- the magistrate says, well, he delayed on that, you really didn't want to make a phone call; I find the officer gave him enough to make a

phone call. Well, I think I would too. I mean, here it is in the language. If you want to call an attorney, you're certainly welcome to. My gosh, there's the officer giving him the phone call. Then Mr. Holden says, well, he had me in my handcuffs, that wasn't really like giving a phone call.
A good attorney would have said -- would have latched onto those words, and anything else has to wait, because you have to provide two phone calls -- opportunity to.....
THE COURT: And remind me, does Zupnik say that the officer has to explicitly offer.....
MS. GERNAT: No.
THE COURT: .....a call to a friend?
MS. GERNAT: No.
MR. CYRUS: It doesn't -- they don't have to offer.
MS. GERNAT: No.
MR. CYRUS: They just can't deny it.
THE COURT: Well.....
MS. GERNAT: No.
MR. CYRUS: And that's.....
THE COURT: Well, that's my point.
MR. CYRUS: He did deny it. That.....
THE COURT: Where -- well.....
MR. CYRUS: In the context, anything else has to wait.
THE COURT: Okay. I understand your.....
MR. CYRUS: He -- that -- so in.....

Case 3:06-cv-00093-TMB Document 18-12 Filed 11/13/2006 Page 5 of 13

THE COURT: .....argument.
MR. CYRUS: .....that context.....
THE COURT: All right, now I.....
MR. CYRUS: .....my.....
THE COURT: All right. I understand your.....
MR. CYRUS: Yeah.
THE COURT: Your argument is that -- and that had you been reading this, you would have said.....
MR. CYRUS: Right.
THE COURT: .....it looks like the officer denied him the right to a friend.....
MR. CYRUS: I -- when I read it.....
THE COURT: .....okay.
MR. CYRUS: .....the first time, it was obvious. It was obvious. I've done.....
MS. GERNAT: Your Honor, I'm going to object, because.....
MR. CYRUS: I've done this for 30 years.
MS. GERNAT: .....Mr.....
THE COURT: Whoa, whoa, whoa, whoa, whoa.....
MR. CYRUS: It was.....
THE COURT: He's allowed.....
MS. GERNAT: No, but Mr. Cyrus is not a witness. They have not put a witness of another attorney on the stand.
THE COURT: No, I -- it.....

MS. GERNAT: He cannot.....
MR. CYRUS: Well, he could take.....
MS. GERNAT: .....testify.
MR. CYRUS: .....notice of that. He could take notice.
THE COURT: I'm trying to understand the argument.
MR. CYRUS: Yeah. Yeah.....
MS. GERNAT: He's arguing, but it's not.....
MR. CYRUS: All right.
MS. GERNAT: .....testimony.
MR. CYRUS: All right, well, I would support you, Judge, [illegible] a felony DWI lawyer -- a judge for years, that's a [illegible] right there. Anything else has to wait till Mat-Su [illegible] -- boom, that raises a Zupnik issue right there. You [illegible] your -- you talk.....
THE COURT: Okay, well, let me.....
MR. CYRUS: .....to your client.....
THE COURT: Let me just be clear.
MR. CYRUS: Yeah.
THE COURT: Let me just be clear.
MR. CYRUS: And that's why I didn't testify. That if we [illegible] conversation, him and Mr. Wells would have.....
THE COURT: All right, now.....
MR. CYRUS: .....had the conversation.....
THE COURT: .....Mr. Wells -- let's keep in mind that Mr. [illegible] Mr. Holden's testimony are not congruent on that

point.
MR. CYRUS: We agree with that.
THE COURT: Okay. So there's a credibility issue. Right?
MR. CYRUS: Right.
THE COURT: Okay.
MR. CYRUS: But we know it wasn't -- we know even if we take Mr. Wells' -- I was raising Zupnik, I saw Zupnik, I saw it there, I raise -- I put it in the citation, I put it in the reply brief -- well, the judge never gets to it. And it's there, Judge. It's right there. Zupnik is right there, but he didn't bring it to the judge's attention. He never brought this phrase to the judge's attention. And I say, law school exam.....
THE COURT: Okay, and you feel that.....
MR. CYRUS: .....essay.....
THE COURT: Okay, and you feel that's.....
MR. CYRUS: .....and.....
THE COURT: .....utterly incompetent, that's below the nadir that a trial counsel would.....
MR. CYRUS: In.....
THE COURT: .....need?
MR. CYRUS: If he's familiar with the DWI field. And this lawyer was familiar with the DWI field. I think he just overlooked those six phrases.

THE COURT: Ms. Gernat, your response?
MS. GERNAT: Thank you, Your Honor. First of all, the issue isn't would a similar attorney as a specialist in the area of DUIs have raised the same issue. The court has properly identified what analysis the court must make. The court makes it and then Mr. Cyrus rewords it to fit his argument. He says any attorney practicing in the field of DUIs would have raised that. That's not what all the case law says.

The case law has to look at an attorney -- in fact, the original case law, Strickland and Rischer (ph), doesn't even focus on criminal law. It just says any attorney, competent attorney in general. The courts have come out to be a little more specific, but not even saying it has to be any criminal attorney. It has to be whether or not there's a -- that decision would have been made by another competent attorney and whether or not the decision to do or not do something by the attorney at issue is below that level of competence.

So what Mr. Cyrus is saying is that he wants this court to believe that Mr. Wells' decision not to file this issue was below the level of competence of basically any other attorney that would be practicing law, or, even more specifically, criminal law.

Now, what Mr. Cyrus does is stand up here and focus, as Mr. Cyrus does in all of his cases, on eight words. What he

Ex. J, p. 20

doesn't tell the court is everything that happens before, that there -- the issue, as Mr. Wells raised, was Mr. Holden's right to call an attorney. Because nowhere in here does Trooper Chadwell ever say, you don't have a right to call a friend. Nowhere in here does Mr. Holden request to call a friend and he be denied. In fact, if the court looks at the transcript prior to all the words that are pulled out by Mr. Cyrus, beginning at the be -- page 2 of the opposition, it says: Are you going to refuse? No, I'm not refusing. So it's go -- and Trooper Chadwell says: So it's going to be one way or another. Holden: I'm talking to my attorney before I do. Well, you're allowed to make a phone call, but we're not going to sit here until 5:00 o'clock for you to make that phone call. Well, I'm going to wait.

And then he asks him about the PBT, which Trooper Chadwell says: I basically can't give you advice about that. And he says: When I talk to my attorney, he will tell me what I should do. Trooper Chadwell says: That's your choice. I'm not trying to talk you out of anything. I'm just telling you the procedure. I have to read you your rights. Holden says: That's what I'm saying. They talk about how he got stopped. He says: I get a phone call, though, right? Sure. Can I have it? If you want to call your attorney, you're certainly welcome to. Anything else has to wait till we get to Mat-Su Pretrial.

That statement is made because Mr. Holden's asking about his right to make a phone call, and essentially Trooper Chadwell's saying, yeah; if you want to do anything else other than that, you got to wait till we get to the -- pretrial; but yeah, you can make.....

THE COURT: Let me just ask you.....

MS. GERNAT: .....your phone call.

THE COURT: .....about that, because Mr. Holden says: I will not say anything, because I came down here to tow -- to get a car out of the ditch for my girlfriend, and you arrested me. Okay, so that's all I'm saying. I'm not saying anything else. And then Trooper Chadwell says: I'm not asking you to say anything. I'm just explaining things to you. I do get a phone call, though, right? Sure. Can I have it? If you want to call your attorney, you're certainly welcome to. Anything else has to wait till we get to Mat-Su Pretrial.

That could infer -- I mean, somebody could infer from [illegible] if that -- you want to call your friend to deal with the [illegible] in the ditch, you have to wait till you get to jail.

MS. GERNAT: But the court's not looking at what happens -- because he doesn't -- he gets allowed to make a phone call. Trooper Chadwell offers to dial -- call any number he wants. And all Mr. Holden ever says throughout this transcript is: my attorney, my attorney, my attorney. That [illegible] is so vague, anything else can then -- going to the

bathroom; smoking a cigarette; changing your clothes; having something to eat.

Mr. Cyrus wants this court to believe that anything else is so glaringly obvious to mean that it's call a friend, that Mr. Wells was below the level of competence -- which I would note, the case law says is not an extremely high level. That it was so glaringly obvious by this entire transcript that Mr. Holden was denied his right to call a friend, that that is what -- and Mr. Wells should have focused on.

Mr. Wells even said he filed a motion that he even questioned whether or not that motion could win. And that was the right to call an attorney. He said that was a stretch. Yet -- and that's all that's discussed in this transcript is about -- if the court continues to look at it, it -- they go through, he says: I'm not refusing. He says: I want you to write the time. Trooper Chadwell says: At this time, do you agree to take the test? Not until I talk to my attorney. Okay. And then if you want to talk to your attorney, you need to make your phone call. And he says: Well, I can't dial the number. He says: No, I'll dial the number and I'll handcuff you in front if that's what it takes; it's up to you. But you need to make your decision here. Not until I talk to my attorney. Well, you want to call him? As soon as I can talk to my attorney. And he says: We're not going to play games here, Mr. Holden. Do you want him -- me to call him or not?

And he says: I speak the language well. And then says: I want to talk to my attorney. And Trooper Chadwell says: And I'm saying right now, do you wish to make that phone call? Yes, I do. What's the number? Do you want me to handcuff you in front? I'm not going to call him right now. I'm going to do it in a few minutes. And he continues going on. He wants a phone book. Well, we have Mat-Su phone books and Anchorage phone books. And he asks if he wants him to use the phone book.....

THE COURT: The context of this is all -- I did read it.....

MS. GERNAT: All about the attorney.

THE COURT: All about the attorney, right.

MS. GERNAT: So the analysis the court has to make is not if I was Mr. Wells, if I was Magistrate Wells, if I was to sit here and do this again. The issue is, what did Mr. Wells do. Mr. Wells testified that he reviewed all of the information, he reviewed the tape, that he filed the motion -- which he thought was a stretch. Certainly the state could have argued probably that it was bordering on a frivolous motion. But he filed a motion that he said was a stretch. He identifies case law. And he says the issue was Mr. Holden calling his attorney.

Mr. Wells has ethical duties. He can't just file any motion that you -- that anybody feels he has to file. I mean,

Ex. J, p. 21

Case 3:06-cv-00093-TMB Document 18-12 Filed 11/13/2006 Page 7 of 13

he has an ethical duty as an attorney to not file frivolous motions, to not file motions that have no merit. Mr. Wells testified under oath that after reviewing all the information, he felt the only motion that even closely had merit was the issue by the attorney. He then mentions in his reply brief as to what -- he basically gives an offer of proof as to why there should be an evidentiary hearing.

And in that offer of proof, which essentially -- incorporated into his reply, he says: Mr. Holden will testify about the following. And he lists a number of things, one of which he was denied a right to call a attorney, family member, or friend. So he's raising it as that's what Mr. Holden wants to raise himself. Obviously -- and it didn't come in an affidavit form, but it came in the form of a reply.

So in the state's point of view, there is nothing about any of the information that this court has that Mr. Wells falls below the level of competence for this court to find him ineffective.

THE COURT: All right.

MR. CYRUS: Well, the last point -- if I can reply -- makes.....

THE COURT: Yeah.

MR. CYRUS: .....her point.....

THE COURT: Got a quick reply.

MR. CYRUS: .....she's saying he raised Zupnik, he raised

it. Well, then we know the judge never decided it.

THE COURT: No, I think what she's saying is that he put in his reply that Mr. Holden would testify to that as fact. But.....

MR. CYRUS: Right. And.....

THE COURT: .....apparently it didn't come up.

MR. CYRUS: That's right. Apparently -- and whose obligation is it to examine the witness, to follow through on his reply promises, the promises that are in his pleading? Mr. Wells. He didn't do it.

THE COURT: Well, Mr. Wells testified today that he didn't think it was an appropriate thing to raise.

MR. CYRUS: Then we're in disagreement. Then we -- then Mr. Wells and I are in disagreement.....

THE COURT: But the fact that you disagree doesn't render him incompetent.

MR. CYRUS: Right. So you have to make the independent [illegible]

THE COURT: That's right.

MR. CYRUS: Right. You -- unless you want to hear from [illegible] on that point, and.....

THE COURT: No, not particularly.

MR. CYRUS: Okay, all right. Because we could -- the -- [illegible] this is -- in my opinion this is rudimentary, okay, Zupnik issue that -- that's right out there.....

THE COURT: Okay.

MR. CYRUS: And our point.....

THE COURT: You have anything else you want to say?

MR. CYRUS: Yeah. And our point is that if he saw the Zupnik issue, puts it in his reply, doesn't examine the witness then, doesn't follow through with Judge.....

THE COURT: All right. And it would be reasonable to infer from the fact that it was not raised during the testimony.....

MR. CYRUS: Yeah.

THE COURT: .....given Mr. Wells's testimony today.....

MR. CYRUS: Yes.

THE COURT: .....that he concluded at the hearing that it wasn't worth pursuing. Right?

MR. CYRUS: Absolutely right. And then that's what.....

THE COURT: Okay, so we.....

MR. CYRUS: .....we're saying. And we.....

THE COURT: So we're past -- his.....

MR. CYRUS: Right.

THE COURT: .....failure to file a reconsideration motion. What we're dealing with at this point is Mr. Wells's, what you believe to be incompetence in not following through at the evidentiary hearing with the offer of proof he made in the reply brief.

MR. CYRUS: Right. And then he's got the -- and he's got

the language right there that he never cites to the court, never talks about it to the court in any of his memorandums.....

THE COURT: That one sentence?

MR. CYRUS: Yeah, that's the.....

THE COURT: All right. Now.....

MR. CYRUS: That's the key sentence.

THE COURT: .....just so we're clear on the.....

MR. CYRUS: Yeah.

THE COURT: .....case law, it is not the police officer's responsibility to tell Mr. Holden that he can call a friend. Right?

MR. CYRUS: Right, but it's also -- as we filed in our brief, it's not the -- the officer cannot discourage.....

THE COURT: I understand.

MR. CYRUS: .....or interfere with that.

THE COURT: I'm -- we're -- right.

MR. CYRUS: And which we assert that's what he did.

THE COURT: I understand your position.

MR. CYRUS: Right.

THE COURT: I just want to be very clear.

MR. CYRUS: Yeah, that's correct. We.....

THE COURT: It is not the officer's responsibility to say you can call a friend.

MR. CYRUS: Right.

Ex. J, p. 22

THE COURT: It is the officer's responsibility not to take actions which would preclude someone from calling.....
MR. CYRUS: Absolutely.
THE COURT: .....a friend. Right? And the.....
MR. CYRUS: As -- and the.....
THE COURT: .....state agrees with that rendition of the case law? The officer doesn't have to say you can call a friend, but the officer can't discourage somebody from calling a friend.....
MS. GERNAT: That's correct.
THE COURT: .....if they desire to do so.
MS. GERNAT: That's correct.
THE COURT: And as I understand it, Mr. Cyrus, it is your opinion that no competent attorney within the realm of reasonable behavior would have looked at that line from the transcript and not said, I've got a Zupnik issue and I need to pursue it, and drawn out testimony from Mr. Holden to the effect that in fact he was unreasonably -- his right to call an -- that Mr. Holden wanted to call a friend and that in fact he didn't get that opportunity because the officer didn't give it to him. Right?
MR. CYRUS: The answer -- and I'm going to be very humble about this, hopefully. I've screwed up and missed many issues before, Judge.
THE COURT: I don't even care.....

MR. CYRUS: Right. Yes.
THE COURT: All right.
MR. CYRUS: The answer is yes.....
THE COURT: We all have messed up. I just dealt with.....
MR. CYRUS: Right, that.....
THE COURT: .....a mess-up here. That's not my question. My question.....
MR. CYRUS: Right.
THE COURT: .....is, you know, would somebody say that somebody falls within -- the fact that you mess up doesn't render you incompetent, right? It just happens.
MR. CYRUS: It.....
THE COURT: The question is whether the mess-up was.....
MR. CYRUS: Right.
THE COURT: .....so bad that it rendered you incompetent at that time.
MR. CYRUS: Right. I mean, good attorneys make -- the -- and our courts have said that.
THE COURT: Good attorneys sometimes.....
MR. CYRUS: Make.....
THE COURT: .....are incompetent. Good attorneys often are -- make mistakes, but are not incompetent in doing so. Right?
MR. CYRUS: Yeah. And sometimes.....

THE COURT: Okay.
MR. CYRUS: .....good attorneys make mistakes that should not have been.....
THE COURT: Are really bad. Yeah.
MR. CYRUS: Yeah. And this is not.....
THE COURT: All right, so.....
MR. CYRUS: .....really bad.....
THE COURT: .....you get that.....
MR. CYRUS: This is not.....
THE COURT: Well, it.....
MR. CYRUS: .....really bad, but.....
THE COURT: .....has to be, because that renders it incompetent.
MR. CYRUS: Well, it's also in the context of a misdemeanor DUI.
THE COURT: Well, he.....
MR. CYRUS: He's in a hurry. He's got a lot of things to do.....
THE COURT: But then it's tactical. You know, we -- you have to be careful what you're saying because you may be conceding what you don't want to concede. What you're telling.....
MR. CYRUS: Oh, no, no. I mean -- I'm -- his.....
THE COURT: What you -- I don't -- you don't need to make excuses for.....

MR. CYRUS: His case.....
THE COURT: .....Mr. Wells, all right?
MR. CYRUS: Oh, his caseload is big. He overlooked.....
THE COURT: I don't even want to hear it.
MR. CYRUS: Okay.
THE COURT: You don't need to make excuses.....
MR. CYRUS: All right.
THE COURT: .....for the attorney. People mess up, and that's -- my role is to determine.....
MR. CYRUS: And that's what we're trying to say.
THE COURT: .....whether it was a mess-up, and if so, if it was so -- such.....
MR. CYRUS: Yeah.
THE COURT: .....a bad mess-up that rendered Mr. Wells incompetent.
MR. CYRUS: And that's the -- really, that's the argument we're making.
THE COURT: And that's your argument.
MR. CYRUS: And the reason is.....
THE COURT: You already said.....
MR. CYRUS: .....because the language is real clear on the.....
THE COURT: I understand.
MR. CYRUS: Yeah, okay.
THE COURT: I wanted to make sure I understood.

Ex. J, p. 23

Case 3:06-cv-00093-TMB Document 18-12 Filed 11/13/2006 Page 9 of 13

MR. CYRUS: Yeah.
THE COURT: And you've confirmed that I understand.
MR. CYRUS: Yeah.
THE COURT: All right. Here's my ruling. I've reread the transcript. I read it before, I've read it again. The context of -- well, preliminarily, the fact that Mr. Wells referenced in his reply brief that Mr. Wells would testify that he didn't get a chance to talk to a friend or family indicates that he in fact did speak with Mr. Holden about it. Because Mr. Wells wouldn't have pulled it out of thin air. That would have been inappropriate. He had to have some factual basis for his conclusion that Mr. Wells -- Mr. Holden would so testify. And, while Mr. Holden's shaking his head at me, that's my ruling, that Mr. Wells had to get that information. The only person he could have got it from was Mr. Holden. And that corroborates Mr. Wells's testimony that in fact he did talk to Mr. Holden about it. It was years ago. People remember what they remember. But Mr. Wells would not as an officer made such an offer of proof unless he had some basis for making that offer of proof.
Having said that, Mr. Wells testified today that both prior to the hearing and during the hearing, he didn't think that he saw adequate grounds to raise what we are calling in shorthand the Zupnik issue. The case law is that the officer doesn't have to offer Mr. Holden the opportunity to speak to a

friend or relative but the officer can't unreasonably interfere with it.
So the question is whether a reason -- a competent attorney would have reviewed this transcript and concluded, given Mr. Holden's statement that he would have liked to have called a relative or friend, that the officer unreasonably interfered with that opportunity. The only thing that Mr. Cyrus hangs his hat on is the statement, everything -- everything else has to wait until we get to Mat-Su Pretrial.
So this first question is, is it a colorable motion. And I believe yes, it's colorable. The second question is, [illegible] -- was it sufficiently colorable or dispositive that any [illegible]nable attorney -- that any competent attorney would have [illegible] the matter. My answer is no. The entire context of [illegible] transcript and the entire context of this case up until [illegible] PCR was filed had to do with the failure to contact an [illegible]y. All of the discussion had to do with contacting an [illegible]y. Mr. Holden at no time in any of this discussion [illegible]d he wanted to call a friend. Not once.
[illegible]sequently, I think a reasonable attorney could -- I [illegible] a competent attorney could conclude that given that [illegible] motion was a stretch, the fact that the officer [illegible] absolutely no indication that Mr. Holden wanted to [illegible] meant that his comment was an offhand comment [illegible]bly could have been better phrased, but that a

competent attorney could conclude that that one was even more of a stretch.
MR. CYRUS: One more finding of fact on that, Judge.
MS. GERNAT: Is the court done.....
MR. CYRUS: Mr. Holden.....
MS. GERNAT: .....with its ruling?
MR. CYRUS: Yeah. Well.....
THE COURT: Yes.
MR. CYRUS: .....I -- I'm just asking for a clarification or a point of view. Our argument -- our perspective was that by the officer saying that, that took Mr. Holden down this path only, and he thought he.....
THE COURT: I note for the record.....
MR. CYRUS: Yeah.
THE COURT: .....that's your position.
MR. CYRUS: Right.
THE COURT: That's why I think it's colorable. I don't think it's so -- that it is such a strong motion that no competent attorney would have ignored it.
MR. CYRUS: Okay, all right. Well.....
THE COURT: Mr. Holden was -- it is quite possible to read that transcript to -- that Mr. Holden was focused on one thing and one thing only: I want to talk to my attorney. And that he was sufficiently drunk at the time that the comment by the officer that, you know, anything else would have to wait

till Mat-Su Pretrial blew right by him. It is susceptible of other interpretations along the lines.....
MR. CYRUS: Right, well.....
THE COURT: .....that Ms. Gernat indicated that the officer was basically saying, sir, we need to do the Intoximeter; all this other stuff you're worried about, you got to wait.
MR. CYRUS: Okay.
THE COURT: And.....
MR. CYRUS: And can -- well.....
THE COURT: .....a competent attorney could conclude that there wasn't enough there to file.
MR. CYRUS: Okay.
THE COURT: A competent attorney could conclude there was enough there to file.
MR. CYRUS: Right, but how.....
THE COURT: But it was not incompetent not to file it.
MR. CYRUS: But.....
THE COURT: It does not fall outside the range of reasonable decisions an attorney would make. That's my ruling.
MR. CYRUS: Okay, even though -- and do you find that he talked to Mr......
THE COURT: Yes.
MR. CYRUS: Mr......

Ex. J, p. 24

Case 3:06-cv-00093-TMB Document 18-12 Filed 11/13/2006 Page 10 of 13

THE COURT: I already said that.
MR. CYRUS: Mr. Holden on the -- about these particular lines, these six lines?
THE COURT: Mr. Cyrus, I -- no, I don't find that he talked.....
MR. CYRUS: Okay.
THE COURT: .....about those specific lines. But.....
MR. CYRUS: That's fine, that's fair.
THE COURT: .....I also find that it was not incompetent for him not to have done so.
MR. CYRUS: Okay. And that -- and we put the issue before you and we appreciate your decision.....
MR. HOLDEN: Can I just say one thing though (indiscernible - away from microphone).
MR. CYRUS: Eric, really -- all right, go ahead, but make it.....
MS. GERNAT: Your Honor.....
MR. CYRUS: .....quick, please.
MS. GERNAT: Your Honor, I'm going to object.
THE COURT: I'm going to sustain the objection. I've made my ruling. The rest of this was clarification.
MR. CYRUS: All right.
MR. HOLDEN: But just for clarification.
THE COURT: It's got nothing to do with what time it is, Mr. Cyrus.

MR. HOLDEN: Just for clarification, Your Honor, please?
THE COURT: What is the clarification request?
MR. HOLDEN: You know me, Your Honor. I've been before you quite a bit. I'll stand up, excuse me. But don't you know -- I know you know this. I would never -- if I'd been made aware of something, I want to be made aware. I don't waive any of my rights. I don't let anybody do anything for me without being.....
THE COURT: Mr. Holden, I'm well.....
MR. HOLDEN: .....informed of it.
THE COURT: .....aware of the situation, all right. I didn't say -- what I said was to clarify that in my opinion Mr. Wells discussed the matter with you. It would not surprise me -- Mr. Holden, it was a long time ago. And, Mr. Holden, I don't want to get into all the other stuff about the evidentiary hearing I did with you where we had some discrepancies between what you said at one time and what you said in another. And I don't want to go there, all right.
What I'm telling you is that Mr. Wells -- even if you jumped up and down and screamed that you wanted Mr. Wells to raise that issue, if Mr. Wells chose not to raise that issue, it was not incompetent for him to have made that decision. So it really has very little to do with whether you wanted him to do it or not. It has a huge amount to do with whether Mr. Wells in the exercise of his professional judgment concluded

that it was not a meritorious motion.
MR. HOLDEN: Are you (indiscernible - away from microphone).....
THE COURT: And what I'm ruling is.....
MR. HOLDEN: Are you (indiscernible - away from microphone).....
THE COURT: .....that it was not incompetent of Mr. Wells to admit -- come to that conclusion.
MR. HOLDEN: Are you not the judge that allowed Mr. Wells to withdraw from my case because of a conflict of.....
MS. GERNAT: Your Honor, I'm objecting.
MR. HOLDEN: .....interest?
THE COURT: That's got.....
MS. GERNAT: .....that's a -- Mr. Holden is not.....
THE COURT: And I'm going to sustain.....
MS. GERNAT: .....an attorney and he's.....
THE COURT: .....the objection. This is not an argument, Mr. Holden.
MR. HOLDEN: But that's one of the reasons.
THE COURT: I have made.....
MR. HOLDEN: That was one of the reasons.....
THE COURT: The fact that Mr. -- Mr. Holden, I don't believe Mr. Wells was relieved because he was incompetent. I believe Mr. Wells was relieved because you and he couldn't communicate.

MR. HOLDEN: Exactly.
THE COURT: But the fact that you guys couldn't communicate doesn't render him incompetent. The fact that Mr. Wells.....
MR. HOLDEN: On these like issues.
THE COURT: .....chose not to do something you asked him to do does not render him incompetent. And that's my ruling.
MR. CYRUS: Well, we understand. There's a bail issue that we need to address.....
MS. GERNAT: Your Honor, I am not -- I do not have the other file with me.....
THE COURT: I'm not doing the other case.
MS. GERNAT: .....I am not addressing -- ready to.....
MR. CYRUS: Okay, that's fair. I'll.....
MS. GERNAT: .....address a bail motion.
THE COURT: I'm not doing the other case.
MR. CYRUS: I'll just talk to her real briefly before.....
MS. GERNAT: No, I'm leaving. You can.....
THE COURT: Yeah. I will just.....
MS. GERNAT: .....do it formally.
THE COURT: I want to say one more thing for the record. We had an extended discussion about whether the judge had to revisit the entire evidentiary hearing. In my opinion, a judge does not have to reconduct the entire evidentiary

Ex. J, p. 25

hearing. I want to make it clear that if it were necessary, a judge might have to look at the record of that evidentiary hearing to ascertain whether or not the issue was raised. As I understand it, the parties agree, based on Mr. Wells's recollection plus Mr. Cyrus's review of the record, that Mr. Wells did not in fact raise.....
MR. CYRUS: Right.
THE COURT: .....the Zupnik issue at the evidentiary hearing.
MR. CYRUS: We agree.
THE COURT: Consequently, there's no need for me to review the record.....
MR. CYRUS: Right.
THE COURT: .....of that hearing, because the record relating to the Zupnik issue is contained in the transcript which we have all looked at and I have made my ruling with respect to that transcript.
MR. CYRUS: The only thing I'd ask you to reconsider, Judge.....
THE COURT: You can file it.
MS. GERNAT: Then the -- no.....
MR. CYRUS: Well, is that the real record should be the actual audiotape that the judge listened to. And I.....
THE COURT: What -- but you've agreed that that record reveals that in fact Mr. Wells didn't raise the issue.

MR. CYRUS: Well, I'm talking about -- see, you're ruling that Mr. Wells.....
MS. GERNAT: Your Honor, I'm.....
MR. CYRUS: .....the transcript.....
MS. GERNAT: Mr......
MR. CYRUS: The transcript.....
MS. GERNAT: Mr. Cyrus, the court.....
THE COURT: Mr. Cyrus.....
MS. GERNAT: .....has made the ruling.
THE COURT: .....I'll tell you what.
MR. CYRUS: What?
THE COURT: If you can find something -- I'm not giving you legal advice. But obviously, if the audiotape is different from the transcript that the DA filed, that would be.....
MR. CYRUS: Right.
THE COURT: .....grounds for reconsideration.
MR. CYRUS: Right, well, that's what I'm trying to -- say.....
THE COURT: I -- you listen -- listen to the tape and get a transcript of your own if you need to.
MR. CYRUS: Okay.
THE COURT: I'm not going to do that now.
MS. GERNAT: And not one of Mr. Cyrus's transcript -- a [illegible].....

MR. CYRUS: Okay, could.....
MS. GERNAT: .....paid-for transcript.
THE COURT: Formal -- transcript.....
MR. CYRUS: Could we make -- irrespective of that, could we make the trans -- the tape that was off.....
THE COURT: No.
MR. CYRUS: .....as part of the record?
THE COURT: Absolutely not. Because you used the transcript in your argument.
MR. CYRUS: Yes.
THE COURT: All right. You gave me no reason to believe that the tape would be different from the transcript. I therefore relied on the transcript. If you find that the officer said something different from.....
MR. CYRUS: No.
THE COURT: .....what the DA's transcript says, you can request reconsideration, because then I would have overlooked something material.
MR. CYRUS: No.
THE COURT: But at this point you have given me no reason to believe that transcript's inaccurate.
MR. CYRUS: Long as we're only relying on the transcript, we can live with that, then. The hard words on the.....
THE COURT: That was -- my ruling.....
MR. CYRUS: Hard words on.....

THE COURT: .....was based on what I read.
MR. CYRUS: Sure. No problem.
THE COURT: All right.
MR. CYRUS: Okay.
THE COURT: But if there's something else, Mr. Cyrus.....
MR. CYRUS: No, no, no, no, if.....
THE COURT: .....you better bring it to my attention.
MR. CYRUS: If the record's only going to be on the hard copies of the words, we can live with that. I will listen to the re -- tape again. I believe you're correct, Judge, that there's no reason to relisten to the tape. We just -- we -- all our disagreement with you is, Judge, is we think the hard words on the transcript triggered a Zupnik.....
THE COURT: And that is.....
MR. CYRUS: That's -- and that's -- I mean.....
THE COURT: .....my ruling. And I've made.....
MR. CYRUS: .....that's.....
THE COURT: .....my ruling.
MR. CYRUS: I mean, that -- that's where it comes down to. And I -- it's almost a.....
MS. GERNAT: Your Honor, can we be done now with this -- few.....
THE COURT: Yes, we can. Mr. Cyrus.....
MS. GERNAT: .....(indiscernible - away from microphone). Thank you.

Ex. J, p. 26

HOLDEN V. SOA, PCR, 3PA-02-00916 CI/3PA-00-00488, 1/21/04 MINIDEP by Kenson

THE COURT: .....you're rearguing. I've made my ruling.
MR. CYRUS: Right.
THE COURT: We'll go off record.
THE CLERK: Court is in recess. Off record.
(Court recessed)
11:50:18

**END OF REQUESTED PORTION**

102

Ex. J, p. 27

TRANSCRIBER'S CERTIFICATE

I, Teresa K. Combs, hereby certify that the foregoing pages numbered 2 through 102 are a true, accurate, and complete transcript of proceedings in Case Nos. 3PA-02-00916 CI and 3PA-00-00488 CR, *Eric Holden v. State of Alaska,* transcribed by me from a copy of the electronic sound recording to the best of my knowledge and ability.

10/7/04
Date

Teresa K. Combs
Teresa K. Combs, Transcriber